# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| THOMAS HIGGINS, | CASE NO. 5:13-cv-02528 |
| Petitioner, | JUDGE JACK ZOUHARY |
| v. | MAGISTRATE JUDGE GREG WHITE |
| CHRISTOPHER LaROSE, Warden | |
| Respondent. | **REPORT AND RECOMMENDATION** |

Petitioner, Thomas Higgins ("Higgins"), challenges the constitutionality of his conviction in the case of *State v. Higgins*, Summit County Court of Common Pleas Case No. 2011-02-0487. Higgins, represented by counsel, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on November 14, 2013.  On January 14, 2014, Warden Christopher LaRose ("Respondent") filed his Answer/Return of Writ.  (ECF No. 6.)  Higgins filed a Traverse on March 17, 2014.  (ECF No. 8.)  For reasons set forth in detail below, it is recommended that Higgins's petition be DENIED.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts

underlying Higgins's conviction as follows:

> [*P2] Charles Ryan Milgrim and Jack Austin Milgrim (collectively, "the Milgrims") are brothers. On the evening of February 13, 2011, Mr. Higgins met the Milgrims to sell them one pound of marijuana. When the Milgrims drove to meet Mr. Higgins to consummate the sale, Mr. Higgins and a friend entered the backseat of the Milgrims' car. C.R. Milgrim then drove a short distance. The end result of the meeting of the four men was that J.A. Milgrim sustained a single gunshot wound. According to the Milgrims, the backseat passenger directly behind J.A. Milgrim attempted to steal the Milgrims' money. Before any sale could occur, he produced a gun and shot J.A. Milgrim when he refused to hand over the money. According to Mr. Higgins, J.A. Milgrim produced a gun, attempted to take the marijuana from Mr. Higgins before any sale could occur, and engaged in a struggle with Mr. Higgins' friend. Mr. Higgins claimed that he fled the car as the gun went off, while C.R. Milgrim told the police that Mr. Higgins was the man who had shot his brother. When the police located Mr. Higgins several hours later, he initially told them that he had been at his grandmother's house for the entire evening.

*State v. Higgins*, 2012 Ohio App. LEXIS 4895, 2012-Ohio-5650 at ¶2 (Ohio Ct. App., Dec. 5, 2012).

## II. Procedural History

### A. Conviction

On March 3, 2011, a Summit County Grand Jury charged Higgins with one count of aggravated robbery in violation of Ohio Revised Code ("O.R.C.") § 2911.01(A)(1) together with a firearm specification and one count of felonious assault in violation of O.R.C. § 2903.11(A)(1) & (2) together with a firearm specification. (ECF No. 6-1, Exh. 2.) On April 28, 2011, a third count was added to the indictment, having weapons while under disability in violation of O.R.C. § 2923.12(A)(1) & (2). (ECF No. 6-1, Exh. 3.) On August 12, 2011, a jury found Higgins guilty of felonious assault and the associated firearm specification.[1] (ECF No. 6-1, Exh. 1.) Higgins

---

[1] Higgins was found not guilty of having a weapon while under disability and the jury could not reach a verdict as to the aggravated robbery charge. The trial court declared

-2-

was sentenced to a term of five years incarceration for felonious assault and a consecutive three year term for the firearm specification. *Id.*

## B. Direct Appeal

On September 27, 2011, Higgins, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Ninth Appellate District ("state appellate court") raising the following assignments of error:

1. The Appellant was not afforded a fair trial and the right to effective trial counsel, as guaranteed by the Sixth Amendment of the United States Constitution.

2. The trial court erred in not granting the Appellant's motion for acquittal per Ohio Crim. 29 because the state failed to present sufficient evidence to find him guilty [of] felonious assault per R.C. 2903.11.

3. The Appellant's conviction was against the manifest weight of the evidence because the jury clearly lost its way and created such a manifest miscarriage of justice that his conviction must be reversed.

(ECF No. 6-1, Exhs. 5 & 6.)

On December 5, 2012, Higgins's conviction was affirmed. (ECF No. 6-1, Exh. 9.)

On January 22, 2013, Higgins, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio raising the same issues as before the state appellate court. (ECF No. 6-1, Exhs. 10 & 11.) On March 27, 2013, jurisdiction was declined pursuant to S. Ct. Prac. R. 7.08(B)(4). (ECF No. 6-1, Exh. 12.)

## C. Federal Habeas Petition

On November 14, 2013, Higgins filed a Petition for Writ of Habeas Corpus and asserted

---

the jury hung and, upon the State's motion, that count was dismissed without prejudice. (ECF No. 6-1, Exh. 1.)

the following grounds for relief:

> **GROUND ONE**: The Petitioner was not afforded a fair trial and the right to effective trial counsel, as guaranteed by the Sixth Amendment of the United States Constitution.
>
> **GROUND TWO**: The trial court erred in not granting the appellant's motion for acquittal per Ohio Crim.R. 29 because the state failed to present sufficient evidence to find him guilty [of] felonious assault per R.C. 2903.11.
>
> **GROUND THREE**: The Appellant's conviction was against the manifest weight of the evidence.

(ECF No. 1.)

### III. Review on the Merits[2]

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

---

[2] As Respondent concedes that the petition is timely and the grounds for relief raised have been exhausted (ECF No. 6 at 6-7), the Court proceeds directly to the merits of the petition.

Supreme Court. *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)) The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006)

(*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ––– U.S. ––––, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id*. at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**A. Ground One: Ineffective Assistance of Trial Counsel**

In his first ground for relief, Higgins argues that his trial counsel was ineffective because he did not file a single pretrial motion, including no demand for discovery. (ECF Nos. 1 & 8.) To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985). A

petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained by the United States Supreme Court:

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter,* 131 S. Ct. 770, 788 (U.S. 2011); *accord Kennedy v. Warren*, 2011 WL

1642194, *2 (6th Cir. May 3, 2011); *accord Goza v. Welch*, 2012 U.S. Dist. LEXIS 178665 at **24-25 (N.D. Ohio Dec. 18, 2012).

Specifically, Higgins asserts that counsel's failure to make a demand for discovery was ineffective. *Id*. Higgins asserts that he was prejudiced because "it can only be assumed that witness statements, law enforcement reports, and whatever out there may exist regarding this case was not provided to defense counsel – resulting in prejudice...." (ECF No. 8 at 10.)

The state appellate court addressed Higgins's ineffective assistance claim as follows:

> [*P5] In his first assignment of error, Mr. Higgins argues that he received ineffective assistance of counsel because his trial counsel never filed any pretrial motions, including motions for discovery. We disagree.
>
> [*P6] This Court must analyze claims of ineffective assistance of counsel under a standard of objective reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Bradley, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Under this standard, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial * * *." *Strickland* at 687. A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *Id*. at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Id*. at 689.
>
> [*P7] Mr. Higgins argues that his trial counsel was ineffective because he did not file any pretrial motions. According to Mr. Higgins, his counsel's failure to file a demand for discovery relieved the State of its duty to comply with Crim.R. 16. Mr. Higgins argues that he was prejudiced by his counsel's performance because "it can only be assumed that witness statements, law enforcement reports, and whatever out there may exist regarding this case was not provided to defense counsel * * *."
>
> [*P8] The fact that defense counsel did not file any pre-trial motions does not support a finding of *per se* prejudice. There is no evidence in the record that discovery did not occur in this case. Indeed, at the final pre-trial hearing, the trial court noted on the record that one reason it had continued an earlier trial date was

-8-

> so that the parties could accomplish "some additional discovery that we discussed at side bar." For the parties to conduct additional discovery, discovery must have occurred. By local rule, open-file discovery is mandated in all criminal cases litigated in the Summit County Court of Common Pleas. S.C.C. Rule 21.06.
>
> [*P9] Moreover, Mr. Higgins cannot point this Court to any actual piece of evidence he did not receive in discovery. Instead, he asks this Court to "assume[] * * * whatever out there may exist * * * was not provided to defense counsel * * *." This Court is confined to the record on appeal and may not engage in assumptions to sustain an ineffective assistance of counsel argument. When "allegations of the ineffectiveness of counsel are premised on evidence outside the record, * * * the proper mechanism for relief is through the post-conviction remedies of R.C. 2953.21, rather than through a direct appeal." *State v. Sweeten*, 9th Dist. No. 07CA009106, 2007 Ohio 6547, ¶ 12. Mr. Higgins has not shown that he suffered any actual prejudice as a result of his counsel's decision not to file any formal pre-trial motions. *See Strickland*, 466 U.S. at 694. Consequently, his first assignment of error is overruled.

*State v. Higgins*, 2012-Ohio-5650 at ¶¶5-9.

The state appellate court plainly applied the correct standard governing ineffective assistance claims. Furthermore, given the doubly deferential standard on habeas review, this Court cannot find the state court's decision resulted in an unreasonable application of clearly established federal law. Essentially, the state appellate court found that Summit County's local rule, which provides for open-file discovery, rendered the need for an official "demand for discovery" unnecessary. In addition, based on statements made during the final pre-trial, the state appellate court concluded that some discovery must have occurred.[3] Higgins's petition and traverse completely ignore these findings. (ECF Nos. 1 & 8.)

Finally, the state appellate court's finding that Higgins failed to demonstrate any actual

---

[3] This Court has conducted its own review of the pretrial transcript, quoted in Respondent's Answer at pages 11 through 12, and observes that the state appellate court accurately recounted the discussion regarding "additional discovery." (ECF No. 5-7 at 2.)

prejudice from counsel's decision not to file any formal pre-trial motions is reasonable. Higgins has offered no explanation as to what other pretrial motions would have been appropriate, nor explained what impact on his criminal case resulted. *Id*. In the absence of any such attempts, it is impossible to conclude that Higgins has met his burden of demonstrating the requisite reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Therefore, Higgins's first ground for relief is without merit.

**B. Grounds Two and Three: Sufficiency and Manifest Weight of the Evidence Claims**

In grounds two and three, Higgins asserts that his conviction was: (1) not supported by sufficient evidence; and, (2) against the manifest weight of the evidence. (ECF No. 1.) The Court will address only sufficiency, as manifest weight claims are not cognizable on federal habeas review.[4] *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin*, 2006 U.S. Dist. LEXIS 99990, 2006 WL 2090093 at *6 (S.D. Ohio 2006).

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction

---

[4] As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin*, 2006 U.S. Dist. LEXIS 99990, 2006 WL 2090093 at *7 (S.D. Ohio 2006), quoting *State v. Martin*, 20 Ohio App. 3d 172, 20 Ohio B. 215, 485 N.E.2d 717 (Ohio Ct. App. 1983). Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Higgins's convictions were against the manifest weight of the evidence. *Id*. Curiously, while Respondent's Return of Writ plainly points out that such claims are not cognizable upon habeas review, the Traverse failed to even acknowledge the issue.

-10-

be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 U.S. App. LEXIS 29301, 1993 WL 460782 at * 3 (6th Cir. 1993) citing *Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court recently emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury — not the court— to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, , 181 L. Ed. 2d 311, 181 L.Ed.2d. 311 (2011) (*per curiam*). And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. 766 , 772, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 132 S.Ct. 2060, 2062, 182 L. Ed. 2d 978 (2012).  Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e . . . inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial."  *Id*. (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

> The state appellate court held as follows:
>
> [*P10]  In his second assignment of error, Mr. Higgins argues that his felonious assault conviction is based on insufficient evidence.  Specifically, he argues that the State failed to prove the serious physical harm and *mens rea*[5] elements of the offense.  We disagree.
>
> [*P11]  "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. No. 24769, 2010 Ohio 634, ¶ 33.  In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution.  *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).
>
>> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

---

[5]  Neither Higgins's petition nor his traverse argues that there was insufficient evidence concerning the requisite culpable mental state.  (ECF Nos. 1 & 8.)  As such, the Court omits any discussion of that issue.

doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

[*P12] The State charged Mr. Higgins with felonious assault under two alternative subdivisions. Pursuant to those subdivisions, "[n]o person shall knowingly * * * (1) [c]ause serious physical harm to another * * *[, or] (2) [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(1)-(2).

* * *

   (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; [and]

* * *

   (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5)(c), (e). "Physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

[*P13] C.R. Milgrim testified that he arranged to buy marijuana from Mr. Higgins through a mutual contact. The two spoke on the phone a few times before Mr. Higgins gave C.R. Milgrim driving directions and the two arranged a meeting. The Milgrims then drove their mother's car to the arranged location. When they arrived, C.R. Milgrim testified, Mr. Higgins and another man climbed into the back of their car with a bag. C.R. Milgrim then drove a short distance away. When he stopped the car, his brother removed an envelope with money from the car's glove box and began to count the money. C.R. Milgrim testified that the drug buy never took place because Mr. Higgins pulled out a gun and tried to forcibly take the money from his brother. When his brother refused to hand over the money, Mr. Higgins shot him. Mr. Higgins and the other man in the backseat then fled.

[*P14] J.A. Milgrim also testified that he and his brother drove to a pre-arranged meeting in order to purchase marijuana and that, when they arrived at the meeting place, two men got into the backseat of their car. J.A. Milgrim also saw one of

the men bring a bag into the car.  Much like his brother, J.A. Milgrim recalled driving a short distance once everyone was in the car and then removing the money he had placed in the glove box to count it.  He also recalled that the backseat passenger directly behind him tried to grab the money and pulled out a gun. When J.A. Milgrim refused to let go of the money, the backseat passenger shot him.  The bullet passed through the back of his left shoulder and out through his chest.

[*P15]  J.A. Milgrim testified that his arm immediately went numb upon getting shot.  After his brother called 911, he was taken by ambulance to the hospital where he remained for two weeks and received treatment for a collapsed lung, broken rib, and nerve damage. He testified that, as of the time of trial, he continued to have pain from his nerves healing. He testified that he was able to use his arm again after ten weeks of physical therapy, but had not yet regained full function of all the fingers on his left hand.

[*P16]  Mr. Higgins first argues that his felonious assault conviction is based on insufficient evidence because the State failed to prove that he caused J.A. Milgrim serious physical harm. Specifically, he argues that there was no testimony from any medical professional in order to establish that J.A. Milgrim's injuries amounted to serious physical harm.

[*P17]  Mr. Higgins fails to set forth any law that the State was required to present expert medical testimony to prove serious physical harm.  *See* App.R. 16(A)(7).  On the contrary, this Court has held that "'serious physical harm' can be inferred under R.C. 2901.01(A)(5) '[w]here injuries are serious enough to cause [the victim] to seek medical treatment * * *.'" *State v. Sales*, 9th Dist. No. 25036, 2011 Ohio 2505, ¶ 19, *quoting State v. Lee*, 8th Dist. No. 82326, 2003 Ohio 5640, ¶ 24.  J.A. Milgrim testified that he sustained a gunshot wound, which caused him to be hospitalized for two weeks.  He further testified that he suffered a collapsed lung, broken rib, and nerve damage as a result of the gunshot, and still had nerve damage in his hand as of the time of trial.  Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that the State set forth sufficient evidence that J.A. Milgrim suffered physical harm that either involved a temporary incapacity or prolonged pain. See R.C. 2901.01(A)(5)(c), (e).  Accordingly, we do not agree that the State failed to present sufficient evidence of serious physical harm.

[*P18]  With regard to Mr. Higgins' serious physical harm argument, we note that he was charged in the alternative and convicted of a violation of R.C. 2903.11(A)(1)/(2).  Mr. Higgins does not address R.C. 2903.11(A)(2) in his sufficiency argument, despite having been convicted under that subdivision.  R.C. 2903.11(A)(2) only requires proof of physical harm caused by a deadly weapon or dangerous ordnance.  *See* R.C. 2901.01(A)(2) ("physical harm" defined as "any

> injury, * * * regardless of its gravity or duration"). The victim here clearly suffered an injury, and the jury specifically found that Mr. Higgins displayed, brandished, indicated that he possessed, or used a firearm to facilitate his felonious assault offense. Thus, while we have already concluded that the record contains sufficient evidence of serious physical harm, R.C. 2903.11(A)(2) provides a separate basis for upholding Mr. Higgins' felonious assault conviction.

*Higgins*, 2012-Ohio-5650 at ¶¶10-18.

In addition, while manifest weight claims are not cognizable upon federal habeas review, "the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence." *Nash*, 258 Fed. App'x at 765. With respect to the manifest weight claim, the state appellate court held as follows:

> [*P22] Mr. Higgins argues that his felonious assault conviction is against the manifest weight of the evidence because the jury lost its way by believing the testimony of the Milgrims over that of Mr. Higgins. Mr. Higgins testified in his own defense and admitted meeting the Milgrims on February 13, 2011, to take part in a drug buy. Mr. Higgins gave the elder brother driving directions and met the Milgrims at their car when they arrived. He then entered the car along with his friend, Marcus Junius, carrying a bag in which Mr. Higgins testified he had placed one pound of marijuana. Mr. Higgins stated that he sat behind the driver of the car and Mr. Junius sat behind the front seat passenger. According to Mr. Higgins, he did not bring a gun with him into the car. Instead, Mr. Higgins claimed that J.A. Milgrim was the one who displayed a gun in the car and tried to force Mr. Higgins and his friend Mr. Junius to hand over the marijuana that they had brought. At that point, Mr. Higgins testified, Mr. Junius grabbed the gun and he and J.A. Milgrim fought over it. The driver then attempted to get involved and Mr. Higgins held him back. Once the driver was able to escape from Mr. Higgins' grip, however, Mr. Higgins exited the car. Mr. Higgins stated that he heard a gunshot at the point that he stepped out of the car. He then ran away.
>
> [*P23] When the police later searched the Milgrims' car, they found the bag that Mr. Higgins had brought into the car with him. Although the bag contained a shoebox and several papers, it did not contain any marijuana. C.R. Milgrim testified that he looked through the bag directly after the shooting and only found a shoebox filled with paper. Neither of the Milgrims testified that a struggle took place in the car before the shooting occurred. Instead, they both testified that the

backseat passengers demanded money from J.A. Milgrim after he began to count it and, when he refused to hand it over, the man directly behind J.A. Milgrim shot him. C.R. Milgrim specifically identified Mr. Higgins as the man who shot his brother.

[*P24]  The police were able to locate Mr. Higgins within several hours of the shooting and interviewed him at the police station.  Mr. Higgins first told the police that he had not been involved in a shooting because he had been at his grandmother's house the entire evening with a friend.  He also told the police that he did not have the cell phone that matched the number the Milgrims had dialed earlier that day because he had lost that phone sometime during the previous month.  Only after the police indicated that Mr. Higgins would be charged did Mr. Higgins admit that he had been present at the time of the shooting and still had his cell phone.  According to Mr. Higgins, he did not bring a gun with him to meet the Milgrims and did, in fact, have a pound of marijuana with him in the car directly before the shooting.

[*P25]  Mr. Higgins argues that the jury lost its way in convicting him because his testimony was more credible than that of the Milgrims. As support that his testimony was more credible, Mr. Higgins points to the fact that the Milgrims actively tried to deceive the police after the shooting by removing several incriminating items from their car.  Upon searching the area where the Milgrims' car had been parked, the police found a marijuana pipe and scale.  Yet, J.A. Milgrim admitted that he threw the items from the car after he had been shot because he did not want the items in the car.  Moreover, Mr. Higgins attempted to deceive law enforcement by telling officers that he had been at his grandmother's house at the time of the shooting and had lost his cell phone.

[*P26]  This Court has held that the weight to be given to the evidence and the testimony of each witness falls squarely within the province of the trier of fact. *State v. Witcher*, 9th Dist. No. 26111, 2012 Ohio 4141, ¶ 14, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.  The fact-finder "is free to believe all, part, or none of the testimony of each witness." *State v. Cross*, 9th Dist. No. 25487, 2011 Ohio 3250, ¶ 35, quoting *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004 Ohio 7184, ¶ 35.  Here, the jury chose to believe the testimony of the Milgrims over that of Mr. Higgins.  Based on our review of the record, we cannot conclude that the jury lost its way by doing so.  This is not the exceptional case where the "evidence weighs heavily against the conviction." *Martin*, 20 Ohio App.3d at 175.  Consequently, Mr. Higgins' argument that his felonious assault conviction is against the manifest weight of the evidence lacks merit.  His third assignment of error is overruled.

*Higgins*, 2012-Ohio-5650 at ¶¶22-26.

Higgins essentially herein raises the same argument as before the state appellate court, but fails to offer any assessment as to how that court's decision was either contrary to or involved an unreasonable application of clearly established federal law. Moreover, this Court cannot overrule a state court's interpretation of state law. *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state."); *see also Riley v. Woods*, 2010 U.S. Dist. LEXIS 81453, 11-12 (E.D. Mich., Aug. 11, 2010) ("A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes.") (*citing Sanford v. Yukins*, 288 F. 3d 855, 862 (6th Cir. 2002); *Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998)). As such, this Court must defer to the state court's determination that expert medical testimony is unnecessary to prove serious physical harm or that the element of serious physical harm can be inferred if an injury is serious enough to require medical treatment. Tellingly, Higgins has not argued that the state court's interpretation of Ohio law is incorrect. In addition, Higgins fails to offer any argument as to the state court's alternative holding that he was charged and convicted of violating of R.C. 2903.11(A)(2), which does not require "serious physical harm" but only "physical harm" caused by "means of a deadly weapon."

At trial, J.A. Milgrim, the victim, testified that he and his brother, C.R. Milgrim, picked up two men with the intention of purchasing a pound of marijuana from them; that he was in the front passenger seat of the vehicle and retrieved $1,000 from the glove compartment, which he began to count; that the person in the seat behind him held a gun to his back and demanded the money; that the other person in the back seat said "shoot him"; that he was subsequently shot; and, that the two back seat passengers took the money, exited the car, and ran. (ECF No. 5-1, Tr.

-17-

56-68.) J.A. Milgrim further testified that he spent two weeks in the hospital with a collapsed lung, broken rib, and nerve damage from the gunshot wound. (Tr. 75.) C.R. Milgrim testified to this same version of events. (Tr. 121- 124.) C.R. Milgrim further testified that he was shown a photo array by the police on the day of the incident, and he signed a picture of the individual who "pulled the trigger," the person who was sitting behind his brother in the car. (Tr. 129-130.) C.R. Milgrim also identified Higgins in court as the person who shot his brother. (Tr. 130-31.) Notably, Higgins himself admitted to being in the vehicle, though he testified that he sat behind the driver; that it was the victim who had the gun; and, that his friend struggled with the victim when the gun went off. (ECF No. 5-4, Tr. 514-521.) In light of the above, there is nothing unreasonable about the state court's determination that sufficient evidence existed to support Higgins's conviction.[6]

Therefore, Higgins's second ground for relief is also without merit.

### IV. Conclusion

For the foregoing reasons, it is recommended that Higgins's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: December 10, 2014

---

[6] Though Higgins argues that he was more credible than the Milgrim brothers, a district court may not weigh the credibility of witnesses and conflicting inferences arising from the record must be resolved in favor of the prosecution.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).